# Delaware and Hudson Canal Company's Appeal.

*Rights of Mortgagee —Subrogation as to prior Judgments, when allowed.*

1. Where a mortgagor had other lands than those mortgaged, which (including the mortgaged premises), were bound by four earlier judgments; the mortgagee, after the payment of those judgments out of the proceeds of a sale of a part of the mortgaged premises, has a right to have them ceded to him: for the mortgage carried with it an equitable right to have the paramount judgments first satisfied out of lands not included in it.

2. It is no objection to the claim for subrogation, that the mortgagee took a judgment-note with the mortgage, and failed to enter it up; nor that considerable sums of money had been paid to the mortgagor, for services rendered by him for a right of way, and for lumber manufactured in part out of timber cut on the lands embraced in the mortgage.

APPEAL from the Common Pleas of *Wayne county*.

This was an appeal from the decree of the Common Pleas of Wayne county, by the President and Managers of the Delaware and Hudson Canal Company, distributing the proceeds of the sheriff's sale of the real estate of Thomas Thomas.

The material facts of the case are as follows :—

Thomas Thomas, the defendant, whose lands have all been sold by the sheriff by virtue of three different sales, hereinafter mentioned, was seised of various pieces of land situate in Waymart borough and Clinton township, Wayne county.

The following judgments were the *first four* liens respectively upon all of said pieces of land, with amounts due on same at date of sale, viz. :—

[Delaware and Hudson Canal Company's Appeal.]

1st Lien.    Lydia A. Forbes  ⎫   No. 149, May Term 1855.
                  *v.*         ⎬   Balance due, $40.
             Thomas Thomas.    ⎭

2d Lien.     W. H. Dimmick     ⎫   No. 140, Sept. Term 1856.
                  *v.*         ⎬   Balance due, $799.53.
             Thomas Thomas.    ⎭

3d Lien.     E. Owen           ⎫   No. 133, Sept. Term 1857.
                  *v.*         ⎬   Balance due, $610.08.
             Thomas Thomas.    ⎭

4th Lien.    Cyprian Carr      ⎫   No. 143, Dec. Term 1857.
                  *v.*         ⎬   Balance due, $266.16.
             Thomas Thomas.    ⎭

On the 6th day of August 1857, said Thomas executed to the President, Managers, and Company of the Delaware & Hudson Canal Company a mortgage covering a part of his said real estate, to secure the payment of three judgment-notes of same date, for $2000 each, payable respectively in one, two, and three years with interest, which said mortgage was duly entered of record in Wayne county mortgage-book, December 11th 1857, whereby the above mortgage became the next lien, after aforesaid four judgments, upon the lands embraced in same.

In the spring and summer of 1858, and after the entry of record of above referred to mortgage, a number of judgments were entered against said Thomas, which became liens upon all of said pieces of land, four of which it is only necessary to mention, as they alone are interested in the question:—

Lemuel Stone's use  ⎫      No. 144, May Term 1858.
      *v.*          ⎬  Entered March 27th 1858, for $354.
Thomas Thomas.      ⎭

      Same           ⎫      No. 146, May Term 1858.
      *v.*          ⎬  Entered March 27th 1858, for $135.
Thomas Thomas.      ⎭

George Spangenberg  ⎫      No. 167, May Term 1858.
      *v.*          ⎬  Entered April 1st 1858, for $400.
Thomas Thomas.      ⎭

Patrick Farley      ⎫      No. 122, Sept. Term 1858.
      *v.*          ⎬  Entered June 18th 1858, for $260.
Thomas Thomas.      ⎭

On the 3d day of September 1858, the sheriff of Wayne county, by virtue of a writ of *fieri facias* issued upon aforesaid judgment of E. Owen *v.* Thomas Thomas, No. 133, Sept. Term 1857, levied upon and sold one of said pieces of land for the sum of $1500. This piece of land was embraced in said canal company's mortgage, and said four first judgments referred to were the first liens upon same, as well as being the first liens

2 W<sub>R</sub>.—33

[Delaware and Hudson Canal Company's Appeal.]

upon other lands of said Thomas not embraced in said mortgage, and subsequently sold by the sheriff as hereinafter mentioned.

On the 9th of September 1857, the court appointed C. S. Minor, Esq., auditor, to distribute the proceeds of said sale, and to report the facts under a rule to show cause why the said referred to judgments in favour of Lydia A. Forbes, W. H. Dimmick, E. Owen, and Cyprian Carr, against said Thomas Thomas, should not be marked to the use of the President, Managers, and Company of the Delaware and Hudson Canal Company, upon their application to said court to be subrogated in place of said plaintiffs in said judgment. The auditor made report appropriating said $1500, less $17.50, expense of audit, to the three judgments first mentioned, viz., L. A. Forbes, W. H. Dimmick, and E. Owen; and the balance thereof, $32.89, to judgment of Cyprian Carr, which appropriation was, December 11th 1858, confirmed by the court, leaving the question of subrogation undisposed of, but referring the same back to the auditor, " to report additional facts in relation to the question of subrogation."

On the 7th day of February 1859, the sheriff of Wayne county, by virtue of a writ issued upon the before-mentioned judgment of Lemuel Stone *v.* Thomas Thomas, No. 146, May Term 1858, sold all the balance of said Thomas Thomas's land not embraced in the mortgage, for the sum of $950, which moneys were brought into court, but not distributed, depending upon the question of subrogation.

On the 29th of April 1859, the sheriff of Wayne county, by virtue of a writ issued upon a judgment entered upon one of the judgment-notes secured by said mortgage, sold all the balance of said real estate covered by said mortgage for the sum of $4930; and the auditor appointed to distribute the proceeds of said last sale, appropriated the same, less $222.38, the costs of sale and auditing, to the canal company's mortgage, leaving still a balance of $2069.56 unpaid thereon. The said judgment of Carr *v.* Thomas, No. 143, December Term 1857, was paid by the canal company, and is satisfied.

The mortgage embraced a large number of pieces of land, the descriptions whereof were furnished by Thomas, and it was the mutual intention and determination of Thomas and said canal company, at the time the mortgage was executed, to embrace in it all the lands owned by him, but it was subsequently ascertained that the land sold by the sheriff, February 7th 1859, for $950, was omitted.

Since the execution of the mortgage the company paid to Thomas Thomas, between September 1st 1857 and June 1858, the following sums for the following items, viz. :—

[Delaware and Hudson Canal Company's Appeal.]

| | | |
|---|---|---:|
| Paid for lumber | . . . . . . | $5090.00 |
| " | right of way for railroad . . | 1500.00 |
| " | services, about . . . . | 485.00 |
| " | teaming, about . . . . | 300.00 |
| Total | . . . . . . . . | $7375.00 |

The timber from which the above referred to lumber was manufactured, or the principal part of same, was cut from the lands embraced in the mortgage, the same being appurtenant to a steam saw-mill situate upon said premises, which said mill said Thomas was running at the time he executed said mortgage, and continued to run same while furnishing said lumber.

Thomas is insolvent, and has no other property, real or personal, to the knowledge of his creditors.

The company claimed, under the above statement of facts, to be subrogated to the rights of the first lien-creditors of Thomas, to the extent of the $1500 raised upon said liens from the mortgaged premises.

The court below (BARRETT, P. J.) filed an opinion, refusing to subrogate the company to the place of the plaintiffs in the said judgment, from which decision this appeal was taken.

*A. H. & Samuel E. Dimmick*, for appellants.—The three judgment-creditors to whose rights the appellants desire to be subrogated, had the first lien upon all of Thomas's land. The appellants held the second, and the appellee held the third lien. The first lien-creditors had liens upon two distinct parcels of land. The appellants had a lien upon only one of them. The third class had liens on all the properties, subject to those of the other two classes and their equities. The first class did not sell the property on which they had the only lien, but levied on and sold one of the tracts embraced in the mortgage, from which they received the amounts of their judgments. This in equity entitles the appellants to subrogation to the rights of the first lien-creditors as against the other real estate of defendant not embraced in the mortgage: Ramsay's Appeal, 2 Watts 228; Reed's Appeal, 1 Harris 476; Dunn v. Olney, 2 Harris 219; Hastings's Case, 10 Watts 303; Neff v. Miller, 8 Barr 348; Gerhart v. Jordan, 1 Jones 331; McCormick's Administrators v. Irvin, 11 Casey 117; Cottrell's Appeal, 11 Harris 294; Bank of U. S. v. G. W. Peters *et al.*, 13 Peters S. C. R. 125; Evertson v. Booth, 19 Johnson 491; 1 Johnson Ch. R. 409; 4 Johnson Ch. R. 17, 132, 682; 1 Story Eq., § 633; Aldrich v. Cooper, White & Tudor's Cases in Equity; Law Lib., Vol. 40, p. 194; Gangwer's Appeal, 12 Casey 469.

There was no printed argument on the part of the appellee.

SUPREME COURT          *[Philadelphia*

[Delaware and Hudson Canal Company's Appeal.]

The opinion of the court was delivered by

STRONG, J.—It surely can no longer be doubted, that where a creditor has a lien upon two funds belonging to one debtor, and another creditor has a subsequent lien upon only one of them, the former is under obligation to exhaust first the fund upon which he has an exclusive lien, before he can resort to the other. This obligation is founded upon the plainest principles of justice and equity. It is nothing more than the obvious duty so to use one's own as not to injure another. It is an equally plain principle of equity, that if the paramount creditor resorts to the doubly charged fund or property, the junior creditor will be substituted to his rights, and will be satisfied out of the other fund, to the extent to which his own may have been exhausted. This is an equity against the debtor himself, that the accidental resort of the paramount creditor to the fund doubly encumbered, shall not enable him to get back the other fund discharged of both debts. And being an equity against the debtor, it is of course equally such against his subsequent judgment-creditors, who have no greater rights than their debtor had at the time their judgments were entered. These principles are too familiar to justify any citation of authorities. Applying them to the case in hand, it is not to be doubted that the appellants are entitled to the subrogation for which they ask. When their mortgage was taken, they acquired against Thomas, the mortgagor, the right to have his other lands, not included in the mortgage, applied first to the payment of the four earlier judgments which were liens upon them. This right it was not in the power of the mortgagor to defeat by confessing judgments to other creditors, or by contracting subsequent debts. And when a portion of the mortgaged premises was sold, and the proceeds applied to the four paramount judgments, equity ceded those judgments to the mortgagees. True, they were discharged at law, but payment does not of course discharge a judgment in equity. Indeed, there never can be subrogation until the creditor is fully paid; for a right to subrogation is rather against the debtor than the creditor. The latter cannot be compelled to cede his claim while anything remains due upon it.

It is no satisfactory objection to the appellants' claim to subrogation, that they took judgment-notes with the mortgage, and failed to have judgments entered upon them. Of this the debtor cannot complain; for the mortgage itself carried with it to the mortgagees an equitable right to have the paramount judgments first satisfied out of the lands not included in it. And as in fact they have been paid out of the mortgaged property, the rule is, as we have seen, that they are to stand for the benefit of the creditors whose security they have taken away. The entry of judgments by the mortgagees would therefore have given them

[Delaware and Hudson Canal Company's Appeal.]

no greater rights than they now possess, so far as relates to the land not included in the mortgage. True, it would have been the substitution of a legal lien for an equitable right to use the liens of the paramount judgment-creditors, but the result would not have been changed. The mistake in the court below was in conceiving that the judgment-creditors subsequent to the mortgage have rights superior to those of their debtor. That they have not, was shown in Ramsay's Appeal, 2 Watts 232, Dunn v. Olney, 2 Harris 223; and so it has been often decided. They are affected by all the equities which existed against him when they obtained their judgments. Nor have the appellants forfeited their right to subrogation by paying to their mortgagor considerable sums of money for services rendered by him, for a right of way, and for lumber manufactured in part out of timber cut on the lands embraced in the mortgage. Most of these payments were made before the judgments of the appellees were entered, and all of them before the first instalment fell due on the mortgage. It was not in the power of the appellants to retain, or to restrain the removal of timber, and the payments were therefore no wrong to the subsequent judgment-creditors, even if they can be regarded as sureties of the mortgagor. They do not, however, stand in the attitude of sureties, and, *a fortiori*, have lost no equitable right through the acts of the appellants.

The order of the Court of Common Pleas refusing a decree of subrogation is reversed, and it is ordered that the appellants be subrogated to the place of the plaintiffs in the four judgments entered against Thomas Thomas before the mortgage to the appellants was executed.