## Shaeffer's Appeal.

101  45
197  147

1. A voluntary assignment of real estate for the benefit of creditors does not affect liens on the same created by existing judgments against the assignor.

2. An assignor for the benefit of creditors cannot except from his general assignment $300 worth "of property exempt from execution," when at the time of making the assignment there are judgments existing against him in which he has waived the benefit of the exemption laws.

3. A claimant under the exemption laws is not entitled to the proceeds of the sale of land unless he has first claimed a part of the land, and it has been decided, by appraisers, that such part cannot be set off without prejudice to the whole.

4. Where a deed of assignment for the benefit of creditors, by which only real estate passed, reserved "so much property as may be exempt from execution," and the assignor neglected to apply for an appraisement of any specific part thereof, or to take any further steps to secure his exemption,—*Held*, that after the death of the assignor, his administrator could not maintain a claim to $300 from the proceeds of the assignee's sale of said real estate.

5. The proper time for the assignor, under such a deed, to make his election of specific property is before the appraisers appointed by the court to appraise the property in the hands of the assignee.

May 24th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

APPEAL from the Court of Common Pleas of *Huntingdon county:* Of July Term 1882, No. 59.

Appeal of Nora C. Shaeffer and Thornton Barnes from a decree of said court, confirming the report of an auditor appointed to make distribution of the proceeds derived from the sale of certain real estate, sold in pursuance of an order of court, by E. P. McKitrick, assignee of John Lukens under a deed of voluntary assignment for the benefit of creditors.

Before the auditor, George B. Orlady, Esq., the following facts appeared:—On October 8th 1879, John Lukens made, to E. P. McKitrick, a general assignment of all his real and personal estate for the benefit of his creditors, "except so much, however, as may be exempt from execution." He had no personalty, and all the real estate which appeared by the appraisement and inventory was a house and lot in the borough of Mount Union.

Prior to the assignment, nine judgments were entered against Lukens. The first one, and the last two, contained no waiver of the exemption law, but in the six intermediate judgments there was a waiver of inquisition, condemnation and the benefit of the exemption laws. On November 4th 1879, Lukens died intes-

tate, having made no claim to the real estate, or any portion thereof, under the reservation in his assignment. After his death, upon application of the assignee, the court ordered a sale of the house and lot; and on the day before the sale, Philip Smith, Lukens's administrator, demanded that the assignee have appraised and set apart $300 worth of the assignor's real estate, as provided for in the deed of assignment. The assignee thereupon summoned appraisers, who decided that the real estate could not be divided so as to set apart $300 worth without injury to the whole, and he accordingly sold the property for $1,651, refusing to comply with the administrator's demand. The sale was confirmed by the court.

Before the auditor appointed to distribute this fund, Smith claimed the $300 in money. His demand was resisted by Nora C. Shaeffer, the owner of the seventh judgment on the list; which waived the benefit of the exemption law; and by Thornton Barnes, the owner of the eighth judgment, in which there was no waiver; since by awarding $300 exemption to Smith, a large part of the Shaeffer judgment, and all of the Barnes judgment, would remain unpaid. They contended that the reservation in the deed could not destroy the effect of the prior waiver in the judgment; and further, that Lukens had forfeited his right to exemption under the provision in his assignment by neglecting to demand any of the real estate, or an appraisement, during his lifetime.

The auditor reported in favor of the administrator's claim, and set apart for him $300 from the fund, applying the remainder to the payment of the first six judgments in full, and a portion of the seventh. Exceptions filed to his report were dismissed, and after it had been confirmed nisi, at the request of the exceptants, it was referred back to the auditor, by the court, to hear and pass upon the effect of certain docket entries relating to one of the judgments which had been paid in full; to wit, judgment 190, August Term 1878, being the third judgment on the list. The auditor refused to alter his report, however, and a decree was entered by the court confirming it absolutely. Whereupon Nora C. Shaeffer and Thornton Barnes took this appeal, assigning for error the decree of the court.

*John S. Blair* (with whom was *D. Blair*), for the appellant, Thornton Barnes.—Lukens made no demand before the appraisers, but permitted them to value and appraise the real estate as a whole, and as the property he had assigned for the benefit of his creditors, and so to return it to court. He therefore forfeited his claim to the exemption reserved in his deed of assignment : Blackburne's Appeal, 3 Wr. 166; Miller's Appeal, 4 Harris 300 ; Weaver's Appeal, 6 Harris 309 ; Mulford

[Shaeffer's Appeal.]

*v.* Shirk, 2 Cas. 473. The claim of the administrator, coming after the advertisement for the sale of the property, was too late. Bowyer's Appeal, 9 Harris 210.

By admitting the administrator's claim, the fund for distribution is divided into two parts, one of which belongs to the administrator, and the other to the judgment creditors. But by virtue of the waivers in the six intermediate judgments, they are liens on both funds, while Barnes has a lien on but one. Equity demands, therefore, that the preferred creditors take the fund which Barnes cannot touch, and allow him to satisfy his claim from the other : Shelly's Appeal, 12 Casey 373 ; Pittman's Appeal, 12 Wr. 315.

*R. A. Orbison* (with whom was *W. P. Orbison*), for the appellant, Nora C. Shaeffer.—A debtor is not entitled to the reservation of $300 in his assignment where he has given a judgment with a waiver of exemption : Bausman's Appeal, 9 Nor. 178. The $300 in contention cannot, therefore, be taken from Nora C. Shaeffer's judgment, or from the subsequent lien creditors, and given to the administrator.

*H. E. Shaeffer*, for the appellee.—The assignor had a right to insert the exemption clause in his assignment, under Act of April 9th 1849 : Purd. 636, § 20, and its supplements ; Mulford *v.* Shirk, 2 Casey 473 ; Heckman *v.* Messinger, 13 Wr. 465 ; Knight *v.* Waterman, 12 Casey 258 ; Blackburne's Appeal, 3 Wr. 160. There is no special form in which the demand for exemption must be made : Diehl *v.* Holben, 39 Pa. St. 213 ; Keller *v.* Bricker, 64 Pa. St. 379. Nor any specific time, provided no delay is caused thereby : Miller's Appeal, 16 Pa. St. 300 ; Brant's Appeal, 20 Pa. St. 141 ; Bowyer's Appeal, 21 Pa. St. 210 ; Neff's Appeal, 21 Pa. St. 247. The reservation in the assignment prevented $300 worth of property from passing to the assignee : Myer's Appeal, 78 Pa. St. 452 ; Van Gunten's Appeal, 6 W. N. C. 345. It follows that no appraisement of the property exempted was necessary : Peterman's Appeal, 26 Sm. 116 ; Larrison's Appeal, 12 Cas. 130. The principles of subrogation do not apply : Evans *v.* Duncan, 4 Watts 24 ; Crof *v.* Moore, 9 Watts 451.

Mr. Justice MERCUR delivered the opinion of the court, October 4th 1882.

This contention is for a fund produced by an assignee's sale of real estate. John Lukens made to the assignee a general assignment of all his real and personal estate for the benefit of his creditors, " except so much, however, as may be exempt from execution." It does not appear that he had any personal

estate. All the property shown by the inventory and appraisement filed by the assignee was a house and lot.

At the time of the assignment the land was encumbered with nine judgments. In the first, and in the last two judgments, there was no waiver of exemption. In each of the six intermediate judgments there was a waiver of inquisition, condemnation, and benefit of exemption laws. The assignor was living on the property when the assignee caused it to be appraised and valued; but made no claim that the property, or any part thereof, be set off to him. Nor did he make any claim for this property, or for any other during his life. After his death, on application of the assignee, the court ordered a sale of this real estate. It was duly advertised, and on the day before the sale was to be made the administrator of the assignor demanded of the assignee that he appraise and set apart to the estate of John Lukens $300 worth of real estate. Thereupon the assignee summoned appraisers, who found the property could not be so divided as to give the estate $300 worth without injury to the whole. The assignee sold, and in his return of sale to court referred to the request of the administrator, and the report of the appraisers. The sale was duly confirmed. On distribution of the money produced by the sale, the court ordered $300 to be set apart to the administrator of John Lukens, as the amount reserved in the deed of assignment. This application of $300 so reduced the fund for distribution as to leave unpaid the greater part of the judgment held by Mrs. Shaeffer in which the exemption was waived, and all of the judgment in favor of Barnes in which it was not waived.

The first question we will consider is, what effect had the assignment on the judgment liens? It certainly did not divest any of them. The land passed to the assignee bound by the liens to the same extent and in the same manner as when the assignor held it. In case a sale by execution on either of the judgments had been made before the assignment, no claim for $300 exemption could have been sustained to the prejudice of the Shaeffer judgment, on which the exemption was waived. It is true, an assignor for the benefit of creditors may except from his general assignment the $300 worth of property exempt from execution, provided he so holds it that he can claim the exemption without making an assignment. He cannot except from the operation of the assignment land bound by a judgment lien, for the payment of which he has expressly agreed the land shall not be exempt from execution. By no such device can he impair the value of a vested lien.

While this sale was not technically made on execution, yet it was by virtue of an order of court. The Act of February

17th 1876, Pur. Dig. 1973, declares that sales of real estate of an assignor for the benefit of creditors made by the assignee after due notice, and confirmed by the court, shall discharge all judgment liens against the real estate so sold. As the lien of the judgments was thus discharged it follows that it was not in the power of the assignor, by demand made at any time, to successfully claim the $300 out of the proceeds to the prejudice of the judgment in favor of Mrs. Shaeffer: Bansman's and Herr's Appeal, 9 Norris 178.

Was the demand made in time to give the claim for $300 priority over judgments in which the exemption was not waived? The general rule is well settled that a claim for exemption must be made with such promptness as to occasion no delay to the one about to sell it, and not permit him to make costs which otherwise might be avoided: Bowyer's Appeal, 9 Harris 210; Davis's Appeal, 10 Casey 256; Morris v. Shafer 12 Norris 489. All the statutes giving the right of exemption from execution relate to the same subject. Being then *in pari materiâ*, they should be construed in reference to each other. Whether the claim be made by the defendant in an execution or by the widow of a decedent, in either case no proceedings can be taken to appraise the property until the claimant designates the specific property which he desires to retain: Weaver's Appeal, 6 Harris 309; Neff's Appeal, 9 Id. 243.

Although the several acts allowing exemptions do not specifically refer to an attachment execution, yet it is held that one claiming exemption against such writ, must demand it at the term to which the writ was returnable, and before the plaintiff has taken any steps which subject him to further costs. The claimant in such case cannot wait until execution issues to collect the judgment: Morris v. Shafer, supra. It is not the intent of any of the exemption laws to give to a claimant that which he did not have, but to permit him to retain that which he has already. He cannot claim the proceeds of a sale of land unless he has first claimed a part of the land, which could not be set off without prejudice to the whole. Here the assignor never made any specific claim to land. It is contended that it was not necessary to make any such claim by reason of the exception in the deed of assignment. But he did not except any specific property. It was only "so much property as may be exempt from execution." It is further said the property excepted did not pass to the assignee. This argument would prove too much. As the assignee could not sell more than passed to him by the assignment, that which the assignor reserved would still remain unsold. It is clear such was not the intent or the effect of the assignment. The whole property passed subject to his right of election. The exception not

being of any specific property, the assignor must first elect before any action could be taken towards valuing it or setting it off. In Peterman's Appeal, 26 P. F. Smith 116, neither the assignor nor the assignee had any knowledge of the property which produced the fund when the assignment was made. It was not inventoried, appraised, nor sold by the assignee. The assignor claimed it " as soon as his right to the fund attached," and being money, no appraisement was necessary. The claim of an assignor may not be made under the Exemption Act of 1849 ; but the exempting power of that act must be invoked to ascertain what property he is entitled to retain. It must be ascertained in some manner. He must make his election. No time is more suitable and just than when the appraisers appointed by the court act, and none are better qualified than they to decide whether it can justly be set off. As they pass upon the value of the property, which goes into the hands of the assignee for the benefit of creditors, every reason exists for requiring the claim to be then made. The case of an assignor's claim, which, if it exists, must arise on the assignment, must not be confounded with the claim of a widow or minor children of a decedent claiming $300 worth of property in the Orphans' Court—that is, to property which the decedent owned when the right was cast on them. Even they may lose it, by not claiming in time. Here the effort of the administrator is to divert from fixed judgment liens property which the assignor did not own at the time of his death. Myer's Appeal, 28 Id. 452, is not applicable to the present case. There the judgment on which the money was claimed, to the exclusion of the $300 reserved, was not recovered until after the assignment was made. It was therefore no lien on the land, and was properly disallowed.

In the present case the learned judge erred in decreeing the $300 to be paid to the appellee, to the prejudice of the judgments held by the appellants.

Under the facts found we discover no error in decreeing payment of the whole of judgment, No. 190, August Term 1878, as it stood wholly unpaid on the confirmation of the sale. It follows that so much of the $300 decreed to Philip Smith, administrator of John Lukens, as may be required to pay the residue of the judgment in favor of Mrs. Shaeffer, should be so applied thereon, and the remainder of the $300 be applied on the judgment in favor of Thornton Barnes. The residue of the fund is correctly distributed, and is confirmed, except as to the $300.

> Decree reversed, and distribution thereof ordered to be made conformably with this opinion, and that the appellee pay the costs of this appeal.