# Shimp's Assigned Estate.

*Auditor—Findings of fact—Review.*

An auditor's findings of fact approved by the court below will not be disturbed by the Supreme Court, where no clear error appears.

*Assignment for creditors—Debtor's exemption—Lien.*

An assignor for creditors has the right to except from his assignment, property to the value of $300. He cannot, however, exercise this right out of real estate to the injury of a creditor who has a lien for purchase money, or a judgment in which the exemption is waived. If the creditor has acquired no lien on the land or the proceeds, he has no standing to prevent the assignor from claiming the exemption reserved in the deed of assignment. If he desires the benefit of the waiving clause, he must secure it by execution or attachment against the property reserved.

*Equity—Subrogation—Marshaling assets.*

The doctrine that where a creditor has a lien on two funds of his debtor, and another creditor has a subsequent lien on only one of these funds, if the prior lien creditor resorts to the fund common to both liens and consumes it, the other creditor shall be subrogated to the rights of the first creditor in the other fund, is a doctrine of purely equitable origin, and will never be decreed where it works an injustice.

The creditor's lien on more than one fund is not the only consideration that moves equity to interpose its powers to enforce the right of subrogation. Before it interferes in behalf of the creditor, he must show that his claim is one of benevolence, that its enforcement will work no injustice to another but will thereby attain the ends of justice, and that its equities are not only equal but superior to that of the contesting claimant. Subrogation never takes place to the prejudice of any other right.

S. owning a farm (No. 1) confessed judgment to E. for $4,400, and subsequently confessed another judgment to the use of M. for $2,000. Thereafter S. purchased two other tracts (Nos. 2 and 3) upon which he confessed a purchase money judgment for $3,000, afterwards marked to the use of M. and at the same time borrowed on second mortgage on these two tracts $3,500, which mortgage was assigned to the appellees. By reason of failure to revive in time M.'s $2,000 judgment lost its place as second lien on tract No. 1 and by subsequent revival became third lien on that tract. It was also third lien on tracts Nos. 2 and 3. On sale of the three tracts, E.'s judgment was paid out of proceeds of tract No. 1 and M.'s $3,000 purchase money judgment out of proceeds of tracts Nos. 2 and 3. The holders of the mortgage claimed that as the $3,000 judgment was a lien on both funds, it having been paid out of proceeds of tracts Nos. 2 and 3, they were entitled to be subrogated to its rights in the fund arising from tract No. 1. The court below so awarded distribution. *Held*, to be error; that the mortgage having no lien on tract No. 1 could not be advanced in the order of liens on that tract by the failure to revive the $2,000 judgment; that the equities of the $2,000 judgment were equal if not superior to the mortgage, and that the latter should therefore not be permitted to participate in the distribution of the fund derived from tract No. 1.

Argued May 15, 1900. Appeal, No. 94, Jan. T., 1900, by John H. McMurdy, from order of C. P. Lancaster Co., Trust Book 17, page 35, dismissing exceptions to auditor's report in case of the Assigned Estate of Samuel Shimp and wife. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and MESTREZAT, JJ. Reversed.

Exceptions to report of A. F. Hostetter, Esq., auditor.

The auditor's report was as follows:

The testimony taken by your auditor discloses that Samuel Shimp and wife, of Eden township, assigned all the property of Samuel Shimp by deed of assignment, dated December 28, 1897, and duly recorded, unto John B. Denlinger, for the benefit of creditors of the said Shimp. This deed contained the usual reservation of $300 worth of property as the assignor's exemption allowed him by law. The assignor claimed this exemption at the hands of the assignee, and selected, besides certain goods and chattels, one-fourth acre of tobacco and the landlord's half of certain wheat then growing on one of the farms assigned by him. These were in due legal form appraised, and he received them from the assignee on account of his $300 exemption. Aside

from what was covered by this reservation the assignor's property passed to the assignee.

The property which thus passed to the assignee consisted of three tracts of real estate, all situated in Eden township, viz : 1. A farm containing 142 acres and 147 perches. 2. A farm containing 71 acres and 80 perches. 3. A wood lot containing $3\frac{1}{2}$ acres.

The assignee sold the second and third of these tracts at public sale, by order of the court of common pleas, on February 24, 1898, the second tract for $5,019.60, and the third tract for $16.50, the purchase money to be paid April 1, 1898. The return of these sales was confirmed nisi by the court on March 21, 1898, and the confirmation of these sales would have become absolute, in regular course, on April 5, 1898, but for the fact that exceptions had been filed on April 5, 1898. These exceptions were pending until May 2, 1898, when they were withdrawn by leave of court, and the confirmation then became absolute. On the same day he received $5,019.60, the purchase money for tract No. 2, and deposited $4,800 of this money in the Lancaster Trust Company, as assignee, upon the understanding that he should receive four per cent interest on it if left there one year. The purchase money for tract No. 3 ($16.50) was not paid to him until April 1, 1899.

Tract No. 1 was offered by the assignee under the same order as the other tracts at this sale on February 24, 1898, but was returned by him to the court as remaining unsold for want of bidders. It was again offered, under an alias order of sale, on September 29, 1898, and then sold for $8,075.17, payable April 1, 1899. This sale was confirmed nisi on October 17, 1898, and absolutely confirmed on November 2, 1898. The assignee received the purchase money ($8,075.17) on April 1, 1899.

On the same day he paid out to Dr. Thomas Ellmaker, as principal and interest of a judgment against the assignor, of which Dr. Ellmaker was the holder, the sum of $5,309.40, and also $4,500 to John H. McMurdy, another judgment creditor, on account of the liens held by him. To make these payments he used the purchase money received by him on April 1, 1899, for tracts Nos. 1 and 3, and drew the balance needed on account of the certificate which he had received in May, 1898, from the Lancaster Trust Company for $4,800. In making this adjust-

ment with him the trust company allowed him interest for one year at four per cent on $4,800, and charged him interest at six per cent on $1,734.23 from April 3, 1899 to May 3, 1899, crediting him with the difference. He still holds a certificate for $2,700 (a part of this $4,800 deposit) issued to him on May 8, 1899, bearing four per cent if left a year, and subject to discount at six per cent for the unmatured portion of the year if drawn prior to May 8, 1900.

On May 8, 1899, the assignee filed his account, which was presented and confirmed nisi on May 22, 1899. In this account he has charged himself with all the purchase money of the three tracts of land sold. He also charges himself with $10.00 received on a claim against the Erie Railroad Company, due assignor, which we may here remark is all the personal property that is shown to have come into his hands. In addition he further charges himself with $100.09 for proceeds of farm No. 2 received by him. These charges make up the total of the debit side of his account. Among the other credits asked by him are credit for the payment of $5,309.40 to Dr. Thomas Ellmaker and $4,500 to John H. McMurdy, on their respective liens. The balance shown by his account as in his hands for distribution is $2,798.31.

Confirmation of this account was prevented by several sets of exceptions, filed by counsel for various creditors, which must first be passed on before distribution is attempted. Though filed by different parties these exceptions cover about the same ground, and may therefore all be considered together. They resolve themselves into first, a general exception that on the debit side the accountant has not accounted for all the moneys which should have come into his hands, and second, that on the credit side he has erred:

1. In the amount of commissions claimed.
2. In the payment to Dr. Thomas Ellmaker.
3. In the payment to John H. McMurdy.

Taking up first the exception to the debit side of his account the grounds upon which the auditor is asked to surcharge him are:

1. That he should be charged with interest on the purchase money of the real estate.
2. That as against judgment creditors whose liens have

waivers of the $300 exemption, and as against one of John H. McMurdy's judgments, which is claimed to be a purchase money judgment, the assignor had no right to his $300 exemption, and the assignee is chargeable for having set it aside.

3. That the assignee should be charged with more income from the assigned real estate while in his hands than he returns.

As to the matter of interest asked to be surcharged against the assignee we have already found the facts as to what moneys he had at interest and upon what terms. It is not at all certain that under the circumstances of this case it was the legal duty of the assignee to place any of the moneys of the estate at interest. But he has very commendably done so, and whatever interest he may realize in this way will of course belong to the creditors. Beyond this we think he is not liable. The testimony shows that he has been credited by the trust company with four per cent interest for one year on $4,800, less six per cent for thirty days on the sum of $1,734.23, thus making $183.33. He has also $2,700 yet on deposit on which he is to receive four per cent for one year, less six per cent for the portion of the year after the date of payment, if paid prior. This date we will fix at December 6, the day on which this report will become absolutely confirmed should no exceptions be filed, thus making $39.64 on this account. With these several sums, $183.33 and $39.54, the assignee will be surcharged.

As to the matter of the assignor's $300 exemption, we have already found that he was allowed this by the assignee. What he claimed and received were certain goods and chattels, about one-fourth acre of tobacco then harvested, but still on the premises unsold, and the landlord's half in certain wheat growing on the land at the time of the assignment. Against either a purchase money judgment or any lien having a waiver of the $300 exemption, the assignor could not have been properly allowed his exemption out of the purchase money of the lands, nor out of any rents as such. But the goods and chattels and the tobacco taken are beyond all doubt personalty, and we think the same is true of the growing wheat: Jones's Appeal, 102 Pa. 285.

We consider that the remedy of any lien creditor holding a

waiver for what passed to the assignor under his exemption in this case would have been by execution against the assignor, and that the assignee is not liable to surcharge for allowing him the things which he did.

With regard to the income received by the assignee from the assigned real estate prior to its sale, the testimony shows that at the time of the assignment both the farms were rented on the shares, the larger one to Adam Overly, and the smaller one to William Keen. The latter farm had been rented to Keen on the halves, by Mr. Shimp, the assignor, on April 1, 1897, for two years. The assignment was made on December 28, 1897, and this farm was sold by the assignee on February 25, 1898, to Lewis Irwin. Mr. Keen having a lease on it which did not expire until April 1, 1899, the sale had to be made subject to this lease, and it was so made. By the terms of this lease the landlord was to have half of the crops. The assignor had taken the landlord's share of the wheat in the ground for 1898 under his $300 exemption, so that the assignee could not have realized this. As to the other crops grown on this place in 1898, Mr. Irwin, the purchaser, got the landlord's half and the assignee realized nothing from it. It is claimed by the exceptants that the assignee should have claimed and received the landlord's half for this year, while the assignee contends that the landlord's interest in Keen's lease was sold with the farm, as it certainly seems to us would have been good business policy. There is some conflict in the recollection of several of the parties who attended the sale as to the precise nature of the understanding, but we think a consideration of the whole evidence on this point justifies the conclusion that the property was sold on the understanding that the landlord's share of the 1898 crops should go to the purchaser. In this case the assignee would, of course, not be liable for them.

The larger farm remained in the occupancy of Mr. Overly as tenant, on equal shares, from the time of the assignment to April 1, 1899. The assignee left this farm, as well as the other real estate while unsold, largely under the oversight of Mr. Shimp, the assignor, as his representative. He made the settlements for the assignee with the tenant for the estate's share of the crops, paid the taxes and expenses, and turned over the balance to the assignee. The wheat in the ground at the time of

the assignment went to the assignor under his exemption, and as this was the only wheat crop harvested during the assignee's trust he had no wheat proceeds to return. From the other crops raised on this farm the landlord's share realized by the assignee was $370.61. This is the only money shown to have been realized for crops by the assignee, and the testimony does not warrant the conclusion that he should or could have realized more. Out of this Mr. Shimp paid for him the taxes on all the real estate, and made other expenditures of which an itemized statement was furnished before the auditor, the whole expenditure aggregating $270.52, thus leaving a balance of $100.09, for which the assignee accounts. While this seems a large expenditure in proportion to the receipts and a comparatively small net return, we are unable to say that the expenditures were improperly made. The only ones about which we see that there might be question are payments for fertilizers, and a bill paid the assignor for work done in cleaning up a swamp on the large farm. The testimony, however, shows that it had been the custom for Mr. Shimp and the tenant, before the assignment, to use artificial fertilizers, and so far as shown the farming in this respect during the assignment followed the same methods as were usual on the farm before, nor does it appear that the amount or quality of the fertilizers used were different. The work done by Mr. Shimp in clearing up the swamp seems from the evidence to have been fairly and reasonably charged for and to have given a better appearance to the farm for the purposes of the sale, and presumably to have helped the sale. It has been held to be proper for the assignee to apply rents and profits to the expense of conducting, keeping in repair, and preparing for sale the real estate assigned to him: Estate of Anthony Irey, 1 Ches. Co. Rep. 63.

And in doing so a certain range of discretion in expenditure must, of course, be allowed. We cannot say that the present assignee has exceeded his discretion in this regard, and as he has accounted for all the profits realized, over and above these expenditures, we will not surcharge him on this account.

. Turning now to the exceptions taken to the credit side of the assignee's account, it is to be said with regard to the subject of commissions that the accountant admits a clerical error in computing these, and that the amount of $55.04 claimed,

should be $5.50. He will, therefore, be surcharged with $49.54 on this account.

The second exception taken to the credit side of the account is to the payment made to Dr. Thomas Ellmaker. His judgment was the first lien on the larger farm, and by renewal had also become a later lien on the other real estate. The interest on this judgment was in arrears at the time of the assignment, from April 1, 1896. On April 3, 1899, after he had received the purchase money for the larger farm, the assignee paid Dr. Ellmaker $5,309.43 on account of this judgment. It is contended by the exceptants that this lien was entitled to interest only up to March 21, 1898, the date of the confirmation nisi of the first sale by the assignee, and that the payment made is an overpayment. If that is the proper date to which interest is to run, Dr. Ellmaker would be overpaid.

The rule has been established by our courts that in sales by assignees under order of court interest runs to the confirmation of the sale: Carver's Appeal, 8 Norris, 276; Tomlinson's Appeal, 9 Norris, 224.

In the present estate there were two sales. The sale of tracts Nos. 2 and 3 became absolutely confirmed on May 2, 1898 and the sale of tract No. 1 on October 27, 1898. To which confirmation does the interest on Dr. Ellmaker's judgment run? As we have seen, it was the first lien on tract No. 1, the sale of which was not confirmed until November 2, 1898, and upon a marshaling of the assets of the estate for distribution it would have the first claim of the proceeds of that tract, which were $8,075.17, or more than enough to pay it in full, and would properly be payable out of that fund. Although it was also a lien by revival on the lands sold at the earlier sale, there were prior liens against those lands which would have absorbed that fund. As a matter of fact, also, he was not paid until after the purchase money for the tract sold in October was paid, and hence may be said to have been actually paid out of that, as he should have been. Under these circumstances we think Dr. Ellmaker was entitled to receive the principal of his judgment with interest to November 2, 1898. This would have amounted to $5,082. He was paid $5,309.43 and hence has been overpaid $227.43. With this amount we surcharge the assignee.

The further material exceptions to the credit side of the account are to payment of $4,500 to John H. McMurdy on account of judgments held by him, and that the assignee did not pay $3,500 with interest to Henry F. Andrews and Amos Gilbert on a mortgage held by them. As the entire fund in the hands of the assignee, after payment of the amount which we have found due on the Ellmaker judgment will be absorbed in the distribution by one or the other of these claimants, and there is a dispute between them as to which of them it belongs, these exceptions really raise the whole question of the proper distribution of the balance, and the two matters will therefore be considered together.

As preliminary to their proper consideration the following additional facts are found:

Prior to April 1, 1882, Samuel Shimp, the assignor, was the owner only of the larger farm (tract No. 1). Against this there were then, of the liens subsisting at his assignment, two judgments.

1. The judgment originally entered on April 11, 1876, for $4,400, and now owned by Dr. Thomas Ellmaker.

2. The judgment originally entered on February 24, 1879, for $2,000, now owned by John H. McMurdy.

On April 1, 1882, Mr. Shimp purchased the smaller farm and the wood lot (tracts Nos. 2 and 3). This property had formerly belonged to James Risk, who died, leaving a will in which he gave one half of it to his widow, Mary E. Risk, and one fourth of it to William Risk, his brother. His widow, Mary E. Risk, as executrix, obtained an order of the orphans' court for the sale of the remaining undivided one fourth. At the same time she and William Risk offered their several interests and the whole property was thus sold to Samuel Shimp. By a deed dated April 1, 1882, Mary E. Risk, as executrix, Mary E. Risk individually, and William Risk conveyed the entire tract to Samuel Shimp. This deed was recorded on April 3, 1882. The whole purchase money amounted to $6,901.20.

The testimony of Mr. Shimp, the only evidence on the point, is that Mrs. Risk had proposed to him prior to the sale that if he became the purchaser she would leave $3,000 of the purchase money in it, and that he arranged to get through Mr. Leaman, Esq., from William R. Vaughn, $3,500 more on mortgage. In

settlement of the purchase money he gave Mrs. Risk this judgment for $3,000, and also gave her a check for $3,500, which he received from Mr. Vaughn, and the balance of the purchase money in cash, all at the same time. The deed is dated April 1, 1882, and the date of its record April 3, 1882. The judgment to Mrs. Risk is dated April 1, 1882, but the precise date when settlement was made does not appear from the evidence. On April 3, 1882, the judgment given by Mr. Shimp in favor of Mary E. Risk for $3,000 was entered. This is simply the ordinary judgment, and nothing appears on its face to show that it was given for purchase money. On the same day a mortgage given by Mr. Shimp to William R. Vaughn, covering the premises conveyed in the foregoing deed, was also entered. Mrs. Risk afterwards accounted as executrix of James Risk for one fourth of the purchase money. The $3,000 judgment of Mr. Risk was subsequently sold to D. G. Eshleman, Esq., who assigned it to John H. McMurdy, who remains the present owner. The Vaughn mortgage was transferred to H. F. Andrews and Amos Gilbert, who are its present owners.

This judgment and this mortgage remained the only liens against this tract until March 26, 1886, when by revival of the Ellmaker judgment, which till then had been a lien only against No. 1, it also became a lien against No. 2, subsequent to the Risk judgment and the Andrews mortgage.

At the time of Mr. Shimp's purchase of No. 2 from the Risks, the only liens against No. 1 were first the Ellmaker judgment and the McMurdy $2,000 judgment. On the entry of Mrs. Risk's $3,000 judgment on April 3, 1882, it also become a third lien on tract No. 1. In this order the liens against both properties remained until January 30, 1889, when the McMurdy $2,000, by failure to revive, lost its lien. On March 22, 1889, it was revived and then also became a lien against No. 2.

Through this failure to revive the McMurdy $2,000 judgment at the proper time, it lost its relative position on tract No. 1, and the McMurdy $3,000 judgment hitherto behind it now become prior to it in lien.

On April 1, 1890, a judgment for $1,600 in favor of C. W. Carpenter, and one for $500 in favor of J. B. Denlinger were entered. At the time of the sale of the real estate the liens against the assignor, therefore, stood in the following order of priority:

1. Against tract No. 1: (1) Ellmaker judgment for $4,400; (2) McMurdy (Risk) judgment for $3,000; (3) McMurdy judgment for $2,000; (4) Carpenter judgment for $1,600 and Denlinger judgment for $500 (both entered same day).

2. Against tracts Nos. 2 and 3: (1) McMurdy judgment, $3,000; Andrews's mortgage for $3,500 (these two entered on same day); (2) Ellmaker judgment for $4,400; (3) McMurdy judgment for $2,000; (4) Carpenter judgment for $1,600 and Denlinger judgment for $500 (both entered same day).

It is contended on behalf of McMurdy that his $3,000 judgment (originally given to Mrs. Risk) is a purchase money judgment, and therefore has priority over the Andrews mortgage, given on the same day, which is not a purchase money lien. It also will be seen that it was at the time of sale a second lien on tract No. 1, and that McMurdy's $2,000 judgment was the next lien to it in priority on tract No. 1. As the fund from the sale of tract No. 1 would not be sufficient to pay the prior Ellmaker judgment and McMurdy's $3,000 lien, and would leave nothing for his $2,000 lien, he claims the right to be paid his $3,000 judgment out of either of the two funds on which he has a lien in such a way as to leave enough in the fund from No. 1 to pay his $2,000 judgment.

On behalf of the Andrews mortgage it is claimed that the $3,000 McMurdy judgment is not a purchase money lien, and both being entered on the same day stand in equal priority as to tracts Nos. 2 and 3, but that the McMurdy judgment having in addition a grasp upon tract No. 1, upon which the mortgage was not a lien, the latter has a right to force payment of the judgment so far as possible out of fund No. 1, or to be subrogated to its rights on this fund.

Is the $3,000 judgment a purchase money judgment?

It is true that it is not so stated in the instrument itself. "But we do not understand that to be necessary in any given case, where, in point of fact, the lien is given for purchase money:" Cohen's Appeal, 10 W. N. C. 544.

Mrs. Risk was, under her husband's will, the absolute owner of the undivided one half of tract No. 2. She joined as an individual with William Risk, the owner of one fourth, in selling to Mr. Shimp, and at the same time sold the other fourth as

executrix to him. The consideration was $6,901.20, of which one half was due her. She had agreed with Mr. Shimp prior to the sale to leave $3,000 in the property. At the settlement she received all over and above $3,000 in cash, but the evidence shows that she got nothing for the $3,000 except this judgment. It was directly from the vendee to her, the vendor of a half interest in the land, and the present holder derives his title from her. The evidence does not show the date when the title was actually passed and this judgment delivered to Mrs. Risk. From the fact that both the deed and this judgment are dated April 1, 1882, the inference might be made that it was on this day. If so a day intervened before the entry of the judgment on April 3. This day was, however, Sunday, and the parties live a long distance from the county seat, and a number of miles from the railroad. On the other hand the Vaughn mortgage was not executed until April 3, and was executed in Lancaster, so that Mr. Shimp was here on that day. His testimony is that he gave Mrs. Risk her judgment, Mr. Vaughn's check and the balance of the cash in settlement for the purchase money "all at the same time." If this was on April 1, he must have had the Vaughn check two days before he gave the mortgage, which is unlikely. If he got the check when he executed the mortgage then the settlement was made on April 3, and the $3,000 judgment was entered on the very day the title passed.

It seems to us that under all the facts of the case the $3,000 judgment may properly be held to be a purchase money lien.

If we are right in this conclusion it follows that this judgment acquired precedence at its entry over the mortgage, which is not claimed to be a purchase money lien, though the latter was entered on the same day : Wolf v. Ferguson, 129 Pa. 272; Jacobs's Appeal, 107 Pa. 137.

But while having thus acquired precedence over the mortgage, does it also follow that it is protected, by the fact of being for purchase money, from the operation of the rules of equity which courts have adopted for the protection of all creditors of a common debtor, if these would otherwise apply?

Nothing is better settled as a rule of equity than that where two are creditors of the same debtor, the owner of more than one fund, he who may at law control the application of more

than one fund shall not be suffered to use his legal advantage in a way to exclude the demand of a fellow-creditor whose legal recourse is but to one fund: Dunn v. Olney, 2 Harris, 220; 2 Trickett on Liens, sec. 804.

In such a case the broader lien creditor must either have recourse to the fund covered by his lien and not by the other, or he must allow the restricted lien creditor the use of his lien to obtain satisfaction out of the fund which he could not otherwise reach: 2 Trickett on Liens, sec. 804.

We have not been referred to any case which holds that a creditor holding a purchase money lien is exempt from this rule, nor are we familiar with any such authority. On principle we see no reason why the rule should not apply to such liens as well as to others.

Subrogation is an equity against the debtor himself, that the accidental resort of the paramount creditor to the fund doubly incumbered shall not enable him to get back the other fund discharged of both debts. And being an equity against the debtor it is equally so against his creditors, who are affected by all the equities which existed against him when they obtained their liens: Delaware & Hudson Canal Co.'s Appeal, 38 Pa. 516.

In the present case the fund from tract No. 2 is not sufficient to pay both the $3,000 judgment and the mortgage, and the latter must be in large part unpaid unless it can be subrogated to the claim of the payment on fund No. 1. This we think must be done unless the holder of that judgment has some other equity which would make the application of the principle unjust in this case. In that event it will not be done.

Subrogation is not a matter of right but of grace, and will not be allowed where it will work injustice to innocent third parties: Ziegler v. Long, 2 Watts, 205; Lloyd v. Galbraith, 32 Pa. 103.

Mr. McMurdy, besides being the owner of the $3,000 judgment which the Andrews mortgage is endeavoring to force for payment on fund No. 1, is also the owner of the $2,000 judgment which at the time of sale stood next to it on fund No. 1, and which is in such position against fund No. 2 that it cannot be reached there. If he can take his $3,000 judgment out of fund No. 2, there will be enough of fund No. 1 left to pay the $2,000 judgment in full. If the $3,000 lien is forced upon fund No. 1,

or the Andrews mortgage subrogated to its claim on that fund, he will lose his $2,000 judgment almost wholly.   He denies that there is any equity that would compel him to relinquish the prior lien that his $3,000 judgment has on fund No. 2, or that would subrogate the mortgage to his rights in fund No. 1, with the result that his other judgment must be lost.

· In determining this question we do not regard the fact that Mr. McMurdy owns both judgments as of legal weight.   The matter is to be decided according to the priority and equity of the several liens without regard to the personality of the owners, and just the same as though the two judgments were owned by different parties.

On behalf of Mr. McMurdy it is argued that his $2,000 judg-ment was entered in 1879, while both the $3,000 judgment and mortgage were not entered until 1882, and that the status of a judgment cannot be altered by subrogation so as to compel it to suffer a loss which it was not obliged to sustain when en-tered.

This may be freely conceded, and if the $2,000 judgment were now in the relative position which it held when the mort-gage was entered in 1882, and after that up to January 30, 1889, it would now be paid in full, and the mortgage could only be subrogated to the claim of the $3,000 judgment against what might remain of fund No. 1 after such payment.   But on Janu-ary 30, 1889, the $2,000 judgment lost this priority, and the $3,000 judgment thus obtained a larger grasp on fund No. 1 by passing ahead of it.   The new lien acquired by the $2,000 judg-ment dates only from its revival on March 22, 1889, and its rights grow only out of whatever position it then obtained.

The position of Mr. McMurdy is that the only effect of this loss of lien was that on its revival the $2,000 judgment changed places with the $3,000 judgment in regard to the priority of its lien on tract No. 1, and that there was no change in the rela-tive position of any of the liens on tract No. 2.   It is true that it did work this change as to No. 1, and the priority of the liens on No. 2 was not changed by it.   If this were all its effect there could be no such subrogation as is asked.   But it seems to us the effect of this loss of lien extended further.

When the mortgage was entered it not only acquired a lien on tract No. 2, subject to the prior $3,000 judgment, but also the right, if needed for its protection, to force this judgment to

realize what might be within its grasp out of tract No. 1 or else to be subrogated to its rights against this tract. It cannot be questioned that, if instead of losing its lien, the $2,000 judgment had been paid off prior to the assignment, and the margin of the $3,000 judgment on tract No. 1 thus enlarged, the mortgage could have gotten the benefit of this enlargement of the rights of this judgment if needed. Did it not also acquire this larger right by operation of law when the lien of the $2,000 judgment ceased by failure to revive?

The benefit of an earlier position in priority accrued, it is true, to the $3,000 judgment, but the mortgage had, it seems to us, acquired at its entry the right to have, if needed, whatever benefit the $3,000 judgment might have out of tract No. 1 whenever it became necessary to enforce this right. The $2,000 judgment lost its place by the default of its own holder, and the hardship which this will work to it does not come to it from the enforcements of the equity of the mortgage, but is the creation of the holder himself. It is true that a benefit will indirectly come to the mortgage which could not have accrued to it had the continuity been preserved. But this is a benefit the possibility of which was involved in the equitable rights of subrogation, which arose in favor of the mortgage when it was entered as a restricted lien subsequent to a judgment which already had also a lien on another fund.

We are of the opinion that the holders of the mortgage in the present case have the right to insist upon payment of the $3,000 judgment so far as needed for their relief out of tract No. 1. As Mr. McMurdy has already been paid by the assignee more than would be due him on this judgment, the matter can best be worked out by considering it to have been paid out of fund No. 2, and by subrogating the mortgage as far as needed to its claim on fund No. 1. Both funds are in the hands of the assignee for distribution, and as there will be enough to pay both the judgment and mortgage, there is no need for apportioning the two funds separately.

The principal of the judgment is $3,000, and interest is due on it at six per cent from April 1, 1896. It was a lien on all the tracts. The sale of Nos. 2 and 3 was confirmed on March 31, 1898, but as it is, under our decision, to be paid in part out of tract No. 1, we think the holder is entitled to interest up to the confirmation of that sale on November 2, 1898.

This makes the amount due $3,463, and to this sum Mr. McMurdy was entitled on account of this judgment.

The principal of the mortgage is $3,500, of which $1,500 is held by Amos Gilbert and $2,000 by H. F. Andrews. The interest on it is due at six per cent from April 1, 1896. This mortgage was a lien only on tracts Nos. 2 and 3, the sale of which was confirmed on May 2, 1898. It had no rights beyond this tract except to force the earlier judgment from its tract, so as to enable it to be paid its full claim, if possible, out of the proceeds thereof. And while it is being subrogated to the rights of the judgment on tract No. 1, this right can only extend far enough to recoup itself for what it could but for the judgment have received out of its own fund. For this reason we think the interest on this mortgage must be held to have ceased on May 2, 1898.

The sum of $1,597.76 will be awarded to Amos Gilbert in payment of his share of the mortgage, and the sum of $2,250.32 to H. F. Andrews in payment of his portion of it.

After payment of what has been found due on the $3,000 judgment of Mr. McMurdy and the awards to Gilbert and Andrews, there will remain a balance of $279, which is awarded to J. H. McMurdy on account of his $2,000 judgment to January term, 1894, No. 562, and has been paid him by the assignee.

As the total amount which we find due J. H. McMurdy is $3,742, while the assignee has asked credit for $4,500 paid him, there has been an overpayment of $758, with which the assignee is surcharged.

The accountant will be allowed credit for twenty-five cents paid the prothonotary, not included in his account, and $11.14 as commissions on the interest with which he has been surcharged.

SCHEDULE OF DISTRIBUTION.

Balance shown in assignee's account   .    .    . $2,798.31
  To which are added the following surcharges :
Interest on moneys in hand   .    .    . $222.97
Error in commissions .    .    .    .    . 49.54
Overpayment to Dr. Ellmaker .    .    . 227.43
Overpayment to J. H. McMurdy    .    . 758.00—1,257.94
                                                         ‾‾‾‾‾‾‾‾‾‾
      Total charged against assignee   .    .    . $4,056.25

Amount brought forward . . . . 4,056.25
From which deduct the following credits allowed
   assignee :

| | | |
|---|---|---|
| Prothonotary's fees . . . . . | $ .25 | |
| Commissions on interest . . . . | 11.14— | 11.39 |

Balance due the estate . . . .    $4,044.86
From which are deducted the following costs of
   audit, viz :

| | |
|---|---|
| Lancaster Law Review . . . . | $2.00 |
| Lancaster New Era . . . . . | 2.00 |
| Lancaster Examiner . . . . . | 2.00 |
| Samuel Shimp, witness fees . . . | 4.84 |
| John Hertzler, " " . . . . | 1.00 |
| Adam Overly, " " . . . | 2.44 |
| Lewis W. Irvin, " " . . . . | 2.42 |
| William Keen, " " . . . | 2.08 |
| Library Room . . . . . . | 2.00 |
| Prothonotary, court fees . . . . | 16.00 |
| Accountant, for attending audit . . . | 20.00 |
| Accountant's counsel . . . . | 40.00 |
| Auditor's compensation . . . . | 100.00— $196.78 |

Balance for distribution . . . . $3,848.08
Which balance is awarded as follows:
To Amos Gilbert, in payment of his share of mort-
   gage entered in mortgage book 36, p. 583 .   $1,597.76
To H. F. Andrews, in payment of his share of mort-
   gage entered in mortgage book 36, p. 583 . . 2,250.32

            . $3,848.08

The court dismissed the exceptions to the auditor's report.

*Error assigned* was in dismissing exceptions to auditor's report.

*G. Ross Eshleman,* for appellant.—A mortgage lien creditor may not be subrogated to the rights of a prior judgment in the proceeds of real estate not covered by the lien of the mortgage, to the prejudice of another judgment of the same judgment creditor also entered prior to the mortgage : McGinnis's App.,

16 Pa. 445; Miller v. Jacobs, 3 Watts, 477; Fritch v. Citizens' Bank, 191 Pa. 283.

An examination into the general principles governing substitution will show in the first place that subrogation is not a matter of right but of grace. It is founded on equity and is not allowed where it would work injustice: Ziegler v. Long, 2 Watts, 205; Erb's App., 2 P. & W. 296; Lloyd v. Galbraith, 32 Pa. 103; Wallace's Est., 59 Pa. 401; Evans v. Duncan, 4 Watts, 24; Miller v. Jacobs, 3 Watts, 477; McGinnis's App., 16 Pa. 445; Cassidy v. Keely, 13 Phila. 112; Aldrich v. Cooper, 8 Vesey, 391; Budd v. Olver, 148 Pa. 194; Bruner's App., 7 W. & S. 269; McDevitt & Hays's App., 70 Pa. 377; Order of Solon v. Gunther, 8 Pa. Superior Ct. 323; Houston's App., 176 Pa. 90.

Subrogation will not be decreed at the expense of a prior judgment creditor, who, on reviving his judgment, neglected to notify a transferee of part of the real estate covered by the judgment: Conrad's App., 11 W. N. C. 521.

Or at the expense of a prior lien creditor who voluntarily surrendered part of his security: Horning's App., 90 Pa. 388; McIlvain v. Mutual Assurance Co., 93 Pa. 30; Bank of Penna. v. Winger, 1 Rawle, 295.

Where there are prior liens on both of two tracts and subsequent liens against each tract alone, and each asks that the prior liens be paid out of the other tract, the legal status of the liens will be allowed to stand: Citizens' Bank v. Fritch, 191 Pa. 283.

If the two McMurdy judgments belonged to different holders, the situation in the present case would be analogous to the above. The right of subrogation may be lost by laches: Gring's App., 89 Pa. 336.

*Edwin M. Gilbert, W. U. Hensel* and *James M. Walker*, for appellee.—The assignor, by virtue of the reservation in the deed of assignment, having selected the growing crop as part of his exemption, and having requested the assignee to appraise it and set it apart for his separate use, which was accordingly done in due form of law, exercised an undoubted election to treat it as his own personal property and retain it as such: Stambaugh v. Yeates, 2 Rawle, 161; Pattison's App., 61 Pa.

294; Reiff v. Reiff, 64 Pa. 134; Hershey v. Metzgar, 90 Pa. 217; Jones's App., 102 Pa. 285.

Where no clear error appears in an auditor's finding of fact and the finding is concurred in by the court below, it will not be reversed where there is evidence to support it, although the proof may not seem as conclusive to the Supreme Court as it is to the auditor: Stevenson v. Sample, 174 Pa. 165; Donaldson's Est., 158 Pa. 292; Prouty v. Prouty, 155 Pa. 112; Coxe's App., 120 Pa. 99; Fahnestock's App., 104 Pa. 49; Mellon's App., 32 Pa. 121; Atkinson's App., 22 W. N. C. 6.

The doctrine of subrogation can be invoked on behalf of a junior mortgage creditor in such a way as to compel a prior judgment creditor, who has a lien on two funds belonging to a common debtor, to resort to that fund upon which the junior mortgage creditor has no lien, as against a judgment creditor who had a prior lien on the second fund, and who, by reason of his failure to revive his judgment, became a subsequent lien creditor: 2 Trickett on Liens, sec. 804, 805; Ramsey's App., 2 Watts, 232; Hastings's Case, 10 Watts, 303; Kyner v. Kyner, 6 Watts, 224; 3 Pomeroy's Equity Jurisprudence, p. 469, note 1; Stewart v. Peterson, 63 Pa. 230; Clippinger v. Miller, 1 P. & W. 71; Del. & Hudson Canal Co.'s App., 38 Pa. 512 · Robeson's App., 117 Pa. 628.

OPINION BY MR. JUSTICE MESTREZAT, July 11, 1900:

The appellant alleges error by the auditor and the court below in not surcharging the assignee with $189.80, the value of the assignor's half of the proceeds of the smaller farm for the year 1898. The auditor found that the farm was sold with the understanding that the assignor's share of the crops for that year should go to the purchaser and that, therefore, the assignee was not required to account for said share in addition to the proceeds of the sale of the farm. There was evidence to support the auditor's finding of the understanding between the parties at the sale, and no clear error appearing in his finding of this fact, and it having been approved by the court below, we will not disturb it. His legal conclusion from the fact is correct.

It is claimed on the part of the appellant that, as against his purchase money judgment and his judgment waiving the exemp-

tion, the assignor had no right to have appraised and set apart to him as a part of his $300 exemption, reserved in the deed of assignment, the one-fourth acre of tobacco, then harvested, but still on the premises unsold, and the landlord's half of certain wheat growing on the premises at the time of the assignment. The auditor and the court below held that both these items were personal property and as such could be allowed as part of the assignor's claim for exemption. This is the subject of complaint in the sixth assignment of error.

An assignor has the right to except from his assignment for the benefit of creditors property to the value of $300. He cannot, however, exercise this right out of real estate to the injury of a creditor who has a lien for purchase money or a judgment lien in which the exemption is waived: Bausman's App., 90 Pa. 178; Wiley's App., 90 Pa. 173; Shaeffer's App., 101 Pa. 45. And if the creditor has acquired no lien on the land or proceeds, he has no standing to prevent the assignor from claiming the exemption reserved in the deed of assignment. If he desires the benefit of the waiving clause in his judgment, he must secure it by execution or attachment against the property reserved: Myers's App., 78 Pa. 452. In this case, Myers recovered his judgment, waiving the exemption, after the assignment and consequently it was not a lien. It was held that he had no claim on the fund assigned. See also Thomas's App., 69 Pa. 120; Dewees's App., 2 Penny. 247.

The auditor's finding of facts relative to the grain in the ground reserved by the assignor is uncertain, indefinite and may possibly lead to an erroneous decision as to the rights of the parties thereto. In his report he says: " The assignor claimed this exemption at the hands of the assignee, and selected, besides certain goods and chattels, one fourth acre of tobacco and the landlord's half of certain wheat then growing on one of the farms assigned by him." In another part of his report, he states that the "tobacco [was] then [at the time of the appraisement] harvested, but still remained on the premises unsold." The auditor and counsel for the parties have disposed of this assignment of error by the discussion and solution of the question of whether the grain in the ground was severed before the sale of the land on which it was grown and thereby became personal property. The auditor holds that the appraisement and setting

apart of it to the assignor under his claim of exemption was a severance. We will dispose of the assignment by a consideration of the same question. The learned counsel for appellant virtually concedes that the auditor's decision as to the tobacco was right under the authority of Jones's App., 102 Pa. 285, but he contends that under the same authority the auditor should have held that the wheat in the ground was not severed before the land was sold, and hence was not personal property. There is no exception to the finding of the fact above quoted, and, hence, we are not required to review it under the evidence submitted to the auditor. According to that finding, the wheat reserved by the assignor was grown on one of the farms assigned. As the auditor has held that it was personal property, we will assume that it was grown on tract No. 1. If it may be successfully contended that the act of the assignee in having it appraised and set apart to the assignor was not a constructive severance of the grain, yet there was an actual severance and setting apart to the assignor of his share thereof in 1898 when it was harvested in the summer of that year. This was prior to the sale of the land which occurred in the fall of 1898. In this view of the case the auditor's conclusion is correct.

The remaining and most important question for our consideration is the action of the auditor and court below in awarding to the Andrews mortgage precedence over the McMurdy judgment in the distribution of the fund in court. The facts are fully found and reported by the auditor and need not be restated here. The auditor held that the holders of the mortgage had a right to insist upon the payment of the McMurdy (Risk) judgment of $3,000 so far as needed for their relief out of the fund produced by the sale of tract No. 1. With the exception of a small sum, this excludes the McMurdy judgment of $2,000 from participation in the fund for distribution. The reason assigned by the auditor for his position is that the McMurdy judgment having lost its lien on tract No. 1, the holder of the Andrews mortgage had the right, under the equitable doctrine of subrogation, to be substituted to the rights of the McMurdy (Risk) judgment against the fund raised by the sale of tract No. 1, and consequently to have his mortgage paid out of said fund in preference to the McMurdy judgment. The arguments of the auditor and of the learned counsel for the appellees in

support of the auditor's decision are based upon the familiar doctrine that where a creditor has a lien on two funds of his debtor, and another creditor has a subsequent lien on only one of these funds, if the prior lien creditor resorts to the fund common to both liens and consumes it, he shall permit the subsequent lien creditor to use the broader security for the satisfaction of the restricted lien out of the funds which it cannot reach. It is contended by the appellees that this rule is applicable to the case in hand and controls it in favor of the mortgage creditor. The appellant does not deny the principle of subrogation asserted by the appellees, nor that it should be applied in a proper case, but he maintains that the auditor and the court below erred in holding that it was applicable to the facts of the case in hand. He contends that his equities are at least equal, if not superior to, those of the holders of the mortgage and that, therefore, he is entitled to the fund for distribution.

The doctrine of subrogation is well established and is said by Chancellor KENT to be founded in natural justice. In Delaware & Hudson Canal Company's App., 38 Pa. 516, Justice STRONG, speaking for the court, says: "This (subrogation) is an equity against the debtor himself, that the accidental resort of the paramount creditor to the fund doubly incumbered, shall not enable him to get back the other fund discharged of both debts." In Ziegler v. Long, 2 Watts, 206, after asserting that the rule of subrogation is well settled, Justice SERGEANT says: "But this principle must be employed, like all other rules of equity, to the attainment of justice; it is not to be used to overthrow the equity of another person, and thus work injustice." In Wallace's Estate, 59 Pa. 405, it is said: "Subrogation is founded on principles of equity and benevolence, and though it may be decreed where no contract or privity exists between the parties, it is not to be allowed except in a clear case, and where it works no injustice to the rights of others. The principle which governs in all cases of substitution is one of equity merely, and it is to be carried out in the exercise of a proper legal discretion, with a due regard to the rights of others; and it is not to be used to overthrow the equity of another, and thus work injustice." In Budd v. Olver, 148 Pa. 197, the court says: "Subrogation is a matter of grace, not of right, and is a creature of pure equity. It will never be de-

creed where it works injustice." "The doctrine of subroga-
tion," says Justice CLARK in Robeson's App., 117 Pa. 633, "is
of purely equitable origin; its application is always controlled
for the promotion of justice; it will never be enforced, there-
fore, to defeat a superior or even an equal equity in another."

Applying these well recognized principles of subrogation to
the facts of the case in hand, we must determine the equities
of the parties to this controversy. It will be conceded that if
the McMurdy judgment had been revived and had still retained
its lien at the time of distribution, it would have been paid out
of the proceeds of the sale of tract No. 1, in preference to the
McMurdy (Risk) judgment. This would have been so by rea-
son of its legal, and not equitable, status. But having lost its
lien and, hence, its right to participate in the distribution of
the fund from tract No. 1 prior to the payment of the McMurdy
(Risk) judgment, did this fact thereby create in the Andrews
mortgage a superior equity entitling it to subrogation against
tract No. 1? The mortgagee loaned his money to Shimp, took
his mortgage and secured his lien on tracts Nos. 2 and 3 in
1882. On the day the mortgage was entered of record, the
McMurdy (Risk) judgment was entered against Shimp which
was the first lien on tracts Nos. 2 and 3 and the third lien on
tract No. 1. At that time, the McMurdy judgment was the
second lien against tract No 1, and a fund arising from a sale of
it would have been applied to that judgment as against the
McMurdy (Risk) judgment.

Such was the legal status of the judgments and mortgage at
the time the latter was taken and entered of record. From
this state of the record and the fact that the mortgagee took a
security for his debt that was restricted to tracts Nos. 2 and 3
and was a second lien thereon, it must be assumed that he did
not anticipate the payment of his mortgage out of the proceeds
of tract No. 1 by reason of an equity superior to that of the
holder of the McMurdy judgment. At that time he had no lien
on tract No. 1 or the fund it might produce, and was not in a
position to invoke the rule of subrogation against the McMurdy
judgment. His rights against the debtor and his property
were then clearly fixed, and he had no superior equity which
would enable him to enforce his claim against tract No. 1, in
preference to the McMurdy judgment. The mortgagee must

be regarded as having taken his mortgage subordinate not only to the prior lien but also to the superior equity of the appellant.

While conceding, as they must, this to be the status of the McMurdy judgment at the date of the entry of the mortgage, the appellees contend, and the auditor so held, that this condition of the rights of the parties had been changed by the failure of the appellant to revive his judgment, and that this act of omission on his part had so far inured to the benefit of the holders of the mortgage as to give them a superior equitable right to the fund from tract No. 1. In support of his position, the auditor argues, that as to the rights of the mortgage creditor the omission to revive the McMurdy judgment had the same effect as the payment of the judgment, and that the present rights of that judgment grow only out of the position it acquired at the date of the revival in 1889, and that the hardship which will follow the payment of the mortgage creditor out of tract No. 1 was created by the holder of the McMurdy judgment himself.

If this were a question of lien only, the position of the auditor would be correct. The new or revived judgment of McMurdy is effective as a lien on tract No. 1 only from March 22, 1889, the date of its revival. In this view, it would be the ordinary case of the holder of a paramount lien having two funds with which to satisfy his claim, and the holder of an inferior lien but one of two funds out of which to realize his claim. The rights of the junior lien incumbrancer to subrogation would be clear and would be enforced. But the creditor's lien on more than one fund is not the only consideration that moves equity to interpose its powers and to enforce the right of subrogation. Before it interferes in behalf of the creditor, he must, as we have seen, show that his claim is one of benevolence, that its enforcement will work no injustice to another but will thereby attain the ends of justice, and that its equities are not only equal, but superior to, that of the contesting claimant. Subrogation never takes place to the prejudice of any other right: Graff & Co.'s Estate, 139 Pa. 75.

Viewed in the light of these principles, wherein does the mortgage claimant possess superior equities to the holder of the McMurdy judgment? As we have observed, he loaned his money and took his security with the knowledge of the

fact that the McMurdy judgment was a lien on tract No. 1, and that he could have no equitable claim through the Mc-Murdy (Risk) judgment against tract No. 1, superior to the appellant's judgment. The records gave him notice of that fact. He was, therefore, not induced to part with his money or invest it upon the faith that this security would take precedence over the McMurdy judgment. On the contrary, he loaned his money to Shimp with the knowledge that all his rights to enforce repayment of it out of the proceeds of tract No. 1 were subordinate to those of the McMurdy judgment. What then was the effect of the holder of the McMurdy judgment permitting it to lose its lien on tract No. 1? It gave no precedence to the mortgage as a lien on the tract, nor are we able to see how it raised a superior equity in its behalf to the fund arising from tract No. 1. The failure to keep alive the lien of the McMurdy judgment did not injure the mortgage creditor, nor in any way prejudice his claim. It was a matter with which he had no concern and, having no lien on the tract bound thereby could not be advanced in the order of liens on the tract. If, however, he is permitted to take the fund for distribution by reason of the McMurdy judgment having lost its lien, he will deprive the holder of that judgment of a fund to which the latter would otherwise be entitled. This would be the only effect produced by the neglect of McMurdy to revive his judgment and it would be most inequitable and unjust. The mortgage creditor never had a legal claim to the fund for distribution, and there is no reason in good conscience why equity should interpose in his behalf or award it to him to the prejudice of the rights of a claim which he, the mortgage creditor, must recognize as prior and superior to his own claim.

The learned auditor thinks that the loss of the lien of the McMurdy judgment had the same effect, so far as the mortgage was concerned, as if it had been paid. In this view, the auditor overlooks the fact that the equity invoked in cases of subrogation is not against the creditor but the debtor. If the debtor had paid the McMurdy judgment, equity would, as against him, have subrogated the mortgage creditor and awarded him the fund, and thus have prevented the debtor from receiving the money while the mortgage debt remained unpaid. But in the present case, the refusal to subrogate the mortgage

creditor to the rights of the paramount creditor will not give the money to the debtor but to a creditor more meritorious than the mortgage creditor.

The auditor further asserts that the injustice that would be done McMurdy by the enforcement of his alleged lien will be occasioned by McMurdy himself by failing to revive his judgment. This assumes that McMurdy owed a duty to the mortgage creditor to keep his judgment alive. This would be true if the failure to do so did any injustice to the holder of the mortgage, but, as we have said, McMurdy's action in not reviving his judgment in no way affected the mortgage or its lien. With equal or greater propriety it may be said that if the mortgage creditor desired to avail himself of tract No. 1 in payment of his claim, it was his duty to secure a lien on it instead of restricting his lien to tracts Nos. 2 and 3.

We are of opinion that the equities of the holder of the McMurdy judgment are at least equal, if not superior to, those of the mortgage creditor and that, therefore, the latter cannot be subrogated to the rights of the McMurdy (Risk) judgment, so as to participate in the proceeds of the fund arising from the sale of tract No. 1.

The decree of the court of common pleas is reversed and the record is remitted in order that distribution may be made in accordance with this opinion, the appellees to pay the costs of this appeal.